## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

RYAN MCCLELLAN, AMBER GOINS,                    :
DORIS KANE, and JOSEPH KANE, *on behalf of*      :
*themselves and others similarly situated*,          :
                                                                      :
                                   Plaintiffs,        :        Civil Action No. _____
                                                                      :
v.                                                                  :
                                                                      :
LOANCARE, LLC,                                         :
                                                                      :
                                   Defendant.        :
_____ :

## CLASS ACTION COMPLAINT

Plaintiffs Ryan McClellan, Amber Goins, Doris Kane, and Joseph Kane (together, "Plaintiffs"), *on behalf of themselves and others similarly situated*, by counsel, file this Class Action Complaint against LoanCare, LLC ("LoanCare"). Plaintiffs allege as follows:

## PRELIMINARY STATEMENT

1.        Plaintiffs bring this lawsuit against LoanCare for its illegal servicing practices and inaccurate credit reporting.

2.        Managing home loans on a day-to-day basis, "servicers can have a direct and profound impact on borrowers."[1] Servicers play an especially important role following the transfer of servicing because errors are prevalent when a loan is onboarded from one servicing entity to another.

3.        Here, for example, Plaintiffs experienced no known issues with their prior servicers, yet they all experienced errors after Loan Care began servicing their respective

---

[1] *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696, 10699 (Feb. 14, 2013) (codified at 12 C.F.R. pt 1024).

mortgages. To be sure, LoanCare erroneously considered—and *still* considers—Plaintiffs' home loans past due even though Plaintiffs paid their mortgages as instructed each month. LoanCare then inexplicably refused to turn over certain account records requested by Plaintiffs related to its errors.

4.      LoanCare's errors give rise to both a class claim and individual claims.

5.      Plaintiffs' class claim involves LoanCare's systemic refusal to provide Plaintiffs and other class members with certain account records upon request, including servicing notes.

6.      Had LoanCare simply complied with its investigative obligations under the Real Estate Settlement Procedures Act ("RESPA"), it would have provided the requested information— which was easily accessible; not confidential, proprietary, or privileged; and not burdensome to produce—to Plaintiffs and the class members.

7.      That critical information then would have allowed Plaintiffs and other class members to, themselves, review account information and provide additional support in their disputes to LoanCare.

8.      Indeed, in Plaintiffs' cases, the servicing notes would have allowed them to investigate and determine why LoanCare considered their accounts late or, put differently, where LoanCare erred. Servicing notes would have been particularly useful because they documented communications between LoanCare and Plaintiffs about Plaintiffs' mortgage accounts, including instructions from LoanCare to Plaintiffs about when to remit payment and to whom.

9.      Plaintiffs, therefore, could have used that information to—if necessary—better articulate their disputes to LoanCare or, at a minimum, show LoanCare why its records were incorrect. They also could have used the information as evidence of the inaccuracies in their credit reports.

10.     LoanCare, of course, did not fix its errors on its own, giving rise to Plaintiffs' individual RESPA claims.

11.     The protections in RESPA, including § 12 U.S.C. § 2605(e), endeavor to promote borrowers' timely access to transparent and accurate mortgage servicing practices. LoanCare's noncompliance with RESPA defeated that purpose and prevented Plaintiffs and the class members from obtaining information that would have exposed LoanCare's errors. As a result, Plaintiffs allege a class claim against LoanCare for its systemic violations related to its duties under RESPA, 12 U.S.C. § 2605.

12.     Plaintiffs disputed LoanCare's servicing of their mortgages by sending qualified written requests directly to LoanCare. In response to Plaintiffs' letters, LoanCare failed to both investigate Plaintiff's qualified written requests and correct its servicing errors in response to the letters. As a result, Plaintiffs also allege individual claims against LoanCare under RESPA.

13.     RESPA provides for actual damages, statutory damages, costs, and attorneys' fees for violations of certain mortgage servicer duties. The imposition of civil liability on servicers for the damage caused by their violations of the requirements of RESPA is essential to achieve RESPA's consumer protection purposes because home mortgage servicers are incentivized "to look for opportunities to impose fees on borrowers to enhance revenues."[2]

14.     Additionally, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, provides additional protections to consumers designed to protect the furnishing of derogatory, erroneous information by their mortgage servicer by imposing further investigative duties on servicers after the homeowner disputes the inaccuracy with the credit bureaus. 15 U.S.C. § 1681s-2(b)(1).

---

[2] *Id.*

15. Plaintiffs disputed LoanCare's inaccurate reporting with the credit bureaus. After LoanCare received notification of Plaintiffs' disputes, it failed to conduct an adequate investigation or correct its inaccurate reporting.

16. As a result, Plaintiffs also allege individual FCRA claims for LoanCare's failure: to properly investigate their disputes; and to review all relevant information provided by the consumer reporting agencies in violation of the FCRA.

## JURISDICTION AND VENUE

17. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 12 U.S.C. § 2605(f), and 15 U.S.C. § 1681(p).

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and Local Civil Rule 3(C) because LoanCare resides in this District and Division.

## PARTIES

19. Plaintiff Ryan McClellan is a natural person residing in this District and Division.

20. Plaintiff Amber Goins is a natural person residing in this District and Division.

21. Plaintiff Doris Kane is a natural person residing in Oakley, California.

22. Plaintiff Joseph Kane is a natural person residing in Oakley, California.

23. LoanCare is a Virginia company with a principal place of business in Virginia Beach, Virginia. At all times relevant, LoanCare was a mortgage loan servicing company governed by RESPA and a "furnisher" governed by the FCRA.

## FACTS

### *Mr. McClellan's and Ms. Goins's Loan Modification*

24. Mr. McClellan and Ms. Goins have a federally-related mortgage on their home in Chesapeake, Virginia.

25.     In early 2018, Mr. McClellan and Ms. Goins fell behind on their home mortgage after Ms. Goins lost her job.

26.     In January 2019, they applied for a loan modification with the then-servicer of their mortgage, Ditech Financial LLC ("Ditech").

27.     Mr. McClellan and Ms. Goins were approved for a trial period plan with Ditech, and they made their three trial period payments as instructed.

28.     Because of their compliance with the trial period plan, Mr. McClellan and Ms. Goins were provided a permanent modification with Ditech, which had an effective date of May 3, 2019.

29.     Mr. McClellan and Ms. Goins completed the requisite paperwork and returned it to Ditech as instructed.

30.     On May 24, 2019, Mr. McClellan called Ditech to ask for updates on the fully executed version of the loan modification.

31.     Ditech advised Mr. McClellan that the servicing of his and Ms. Goins's loan would be soon transferred to LoanCare.

32.     Ditech assured Mr. McClellan that there was nothing to be concerned about regarding the modification and advised Mr. McClellan to make his June 2019 payment to LoanCare. On May 31, 2019, Mr. McClellan called LoanCare to make payment arrangements.

33.     LoanCare told Mr. McClellan to call back on June 7, 2019 to set up payments and that, in any event, he had a 60-day grace period.

### *Transfer of the Servicing of Mr. McClellan's and Ms. Goins's Loan to LoanCare*

34.     LoanCare mailed Mr. McClellan and Ms. Goins a Notice of Servicing Transfer on or about June 7, 2019.

35.     Mr. McClellan and Ms. Goins continued to make the modified mortgage payment as instructed.

36.     Mr. McClellan and Ms. Goins had not missed any mortgage payments, yet inexplicably, on June 1, 2020, LoanCare advised Mr. McClellan that he was "behind on payments."

37.     Mr. McClellan and Ms. Goins were surprised by that revelation because they had agreed to a loan modification and, at all times, made their monthly payments as instructed.

38.     After Mr. McClellan reached out to LoanCare to question LoanCare's representation that their home loan was behind on payments, a LoanCare agent told Mr. McClellan that a supervisor would call him back to explain the situation.

39.     Mr. McClellan never received a return call.

40.     On June 4, 2020, Mr. McClellan again called LoanCare, at which time he was told to not make a payment because there was a risk that a payment could confuse the system.

41.     The LoanCare agent advised Mr. McClellan that something appeared to be wrong on LoanCare's end and that LoanCare would attempt to "iron things out."

42.     No resolution, however, was ever communicated to Mr. McClellan or Ms. Goins.

***LoanCare's Incorrect Treatment of Mr. McClellan's and Ms. Goins's Loan as Past Due***

43.     Unbeknownst to Mr. McClellan and Ms. Goins, and even though they made payments as instructed on their modified mortgage, LoanCare treated their loan as 90 or more days past due every month after the trial payment plan was completed.

44.     LoanCare has continued to erroneously treat Mr. McClellan's and Ms. Goins's account as 90 or more days late each month. LoanCare also has refused to accept monthly payments tendered by Mr. McClellan and Ms. Goins.

45.     Along with erroneously assessing late fees on their account and treating their account as 90 or more days past due, LoanCare has inaccurately reported and continues to report Mr. McClellan's and Ms. Goins's account to the credit bureaus as 90 or 120 days late.

46.     Because of its erroneous treatment of the account as 90 or more days late, LoanCare considers Mr. McClellan's and Ms. Goins's loan to be "in default." LoanCare has, in turn, racked up improper default related fees on their account.

### *LoanCare's Refusal to Correct Mr. McClellan's and Ms. Goins's Account, LoanCare's Refusal to Turn Over Documents & LoanCare's Investigative Failures*

47.      Mr. McClellan and Ms. Goins repeatedly informed LoanCare that their account was in error, and LoanCare repeatedly failed to correct their account or provide requested information.

48.     Mr. McClellan and Ms. Goins submitted multiple qualified written requests to LoanCare about the errors on their account, including on or about November 25, 2020, and April 21, 2021.

49.     Both qualified written requests were mailed to the address designated by LoanCare for qualified written requests.

50.     The qualified written requests asked LoanCare to correct the accounting, honor the permanent modification Mr. McClellan and Ms. Goins had entered into with Ditech before the servicing transfer, and remove all default-related fees and charges since they had never been behind.

51.     The April 2021 request also specifically asked for documents and records pertaining to Mr. McClellan's and Ms. Goins's loan, including LoanCare's and Ditech's servicing notes:

6.      Please provide all of the servicing notes from my loan file.

7.      Please provide the recording from my calls with your representatives from June 2020 to present.

8.      Please provide transaction codes used by your electronic servicing system that will assist in understanding the entries for transactions listed in the information provided in response to this request.

52.     LoanCare refused to investigate its errors and completely disregarded the fact that Mr. McClellan and Ms. Goins had completed a loan modification with Ditech and that they had since made payments each month as instructed by both LoanCare and Ditech.

53.     Further, in response to Mr. McClellan's and Ms. Goins's request for servicing notes, as well as other LoanCare records, LoanCare responded as follows:

> We are unable to provide all of the servicing notes, call logs, and all of the previous servicer's communications as this request includes confidential, proprietary or privileged information. We do regret any frustration or inconvenience you may have experienced as a result of this matter.

54.     LoanCare, therefore, flat out rejected Mr. McClellan's and Ms. Goins's request for information, including servicing notes, critical to Mr. McClellan's and Ms. Goins's elsewhere-stated concerns about the status of *their* home loan.

55.     LoanCare reasoned that the information was "confidential, proprietary or privileged" even though it necessarily pertained only to the requestors—Mr. McClellan and Ms. Goins.

56.     Mr. McClellan and Ms. Goins, in turn, were hamstrung in their attempts to show LoanCare its post-transfer errors.

### *LoanCare's Inaccurate Credit Reporting Regarding Mr. McClellan and Ms. Goins*

57.     Mr. McClellan's and Ms. Goins's mortgage was reported as at least 90 days past due on their credit reports.

58.     In January 2021, Mr. McClellan and Ms. Goins each disputed their LoanCare account with the three major credit reporting agencies—TransUnion, Equifax, and Experian.

59.     Mr. McClellan and Ms. Goins each attached proof that they paid each disputed payment in the manner and amount they were instructed to do.

60.     Upon information and belief, the consumer reporting agencies forwarded Mr. McClellan's and Ms. Goins's disputes to LoanCare.

61.     Despite Mr. McClellan's and Ms. Goins's disputes and the supporting information attached to the disputes, LoanCare failed to conduct an adequate investigation and refused to remove the inaccurate, derogatory information from Mr. McClellan's and Ms. Goins's credit reports.

62.     LoanCare continued to furnish the inaccurate, derogatory information about Mr. McClellan's and Ms. Goins's mortgage to the credit bureaus.

### The Kanes' Loan and Transfer of the Servicing of the Loan to LoanCare

63.     The Kanes have a federally-related mortgage on their home in Concord, California.

64.     The Kanes' loan originated in August 2019 with Flagstar Bank, FSB.

65.     LoanCare mailed the Kanes a Notice of Servicing Transfer on or about October 9, 2019.

66.     LoanCare instructed the Kanes at that time that their first payment was due by November 1, 2019.

67.     The Kanes made their first payment on October 10, 2019, and LoanCare confirmed to the Kanes that the October payment would satisfy the payment due by November 1, 2019.

68.     The Kanes then made another payment on November 12, 2019.

69.     On or about December 1, 2019, the Kanes called to inquire about the amount and due date of their next payment as they had not received a mortgage statement from LoanCare.

70.     LoanCare told the Kanes that their mortgage balance had a credit and that their November 12, 2019 payment made them current through December, meaning that no additional payment was owed for December 2019.

71.     The Kanes then called LoanCare to make their January 2020 payment on December 31, 2019.

72.     The Kanes continued to make their monthly mortgage payments to LoanCare.

73.     Unbeknownst to the Kanes, however, and despite representations from LoanCare that they were current on their mortgage, LoanCare gave one of the Kanes monthly payments to Flagstar, their prior servicer.

74.     LoanCare's payment reversal and retroactive payment application to Flagstar led to the Kanes becoming—according to LoanCare—one month behind on their mortgage payments.

### LoanCare's Incorrect Treatment of the Kanes' Loan as Past Due

75.     Even though the Kanes did not miss a payment on their mortgage and paid as LoanCare instructed, LoanCare treated their loan as 30 days past due.

76.     LoanCare has continued to erroneously treat the Kanes' mortgage as 30 days late since March 2020.

77.     Thus, each month, LoanCare accepts the Kanes' timely payment, credits the amount for the previous month's payment that has already been timely paid, and assesses a late fee.

78.     Along with erroneously assessing late fees on the Kanes' account and treating it as 30 days past due, LoanCare has inaccurately reported and continues to report their account to the credit bureaus as 30 days late.

79.     Even more, because of its erroneous treatment of the account as 30 days late, LoanCare considers the Kanes' loan to be "in default." LoanCare has, in turn, racked up improper fees on their account.

### *LoanCare's Refusal to Correct the Kanes' Account, LoanCare's Refusal to Turn Over Documents & LoanCare's Investigative Failures*

80.     The Kanes informed LoanCare that their account was in error several times, and LoanCare repeatedly failed to correct their account.

81.     The Kanes submitted multiple qualified written requests to LoanCare about the errors on their account, including on or about August 27, 2020 and September 2, 2020.

82.     Both qualified written requests were mailed to the address designated by LoanCare for qualified written requests.

83.     The letters requested that LoanCare confirm that they made payments exactly as LoanCare had instructed during and after the servicing transfer process and correct its records as showing them in default.

84.     The Kanes also specifically asked for documentation pertaining to the Kanes' loan, including LoanCare's servicing notes so it could prove the statements that LoanCare made to them about payments:

> 2)     Please provide documentation of all communications with Flagstar regarding the transfer of my loan and application of my mortgage payments.
>
> 3)     Please provide all of the servicing notes from my loan file.
>
> . . . .

7)    Please provide transaction codes used by your electronic servicing system that will assist in understanding the entries for transactions listed in the information provided in response to this request.

85.    LoanCare responded to the September 2020 request on or about November 10, 2020, refusing to investigate or correct the errors.

86.    LoanCare completely disregarded that the Kanes made payments exactly as LoanCare had instructed at all times.

87.    Further, in response to the Kanes' request for servicing notes, as well as other LoanCare and Flagstar records, LoanCare refused to provide them.

88.    The Kanes, in turn, were hamstrung in their attempt to show LoanCare its post-transfer errors.

### *LoanCare's Inaccurate Credit Reporting*

89.    The Kanes' mortgage was reported as 30 days past due on their credit reports.

90.    In April 2021, the Kanes each disputed their LoanCare account with the three major credit reporting agencies—TransUnion, Equifax, and Experian.

91.    The Kanes each attached proof that they paid each disputed payment.

92.    Upon information and belief, the consumer reporting agencies forwarded the Kanes' disputes to LoanCare.

93.    Despite the Kanes' disputes and the supporting information attached to the disputes, LoanCare refused to remove the inaccurate, derogatory information from the Kanes' credit reports.

94.    LoanCare continued to furnish the inaccurate, derogatory information to the credit bureaus.

**COUNT ONE:**
**Violation of RESPA, 12 U.S.C. § 2605(e)(2), Reg. X, 12 C.F.R. § 1024.36**
**(Class Claim)**

95.     Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

96.     Under Rule 23(b)(3) and (c)(4) of the Federal Rules of Civil Procedure, Plaintiffs seek certification of the following class ("RESPA Class"):

> All consumers who: (1) in the three years preceding the filing of this Complaint (2) submitted qualified written requests to LoanCare at its designated address (3) requesting the consumers' servicing notes (4) which were not provided to the consumer in response to the request.

97.     **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. LoanCare is one of the nation's largest mortgage servicers. Upon information and belief, thousands of consumers were subjected to LoanCare's improper, uniform QWR response procedures during the class period. These class members' names and addresses are identifiable through LoanCare's internal business records, and they may be notified of this litigation by published or mailed notice.

98.     **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether LoanCare's refusal to produce servicing notes is improper; (2) whether LoanCare's conduct violated RESPA; and (3) the appropriate amount of statutory damages.

99.     **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member. Plaintiffs are also entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

100.     **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4)**. Plaintiffs are adequate representatives of the putative class because their interests coincide with, and are not antagonistic to, the interests of the class members that they seek to represent. Plaintiffs have retained counsel competent and experienced in class-action litigation, and they intend to continue to prosecute the action vigorously. Plaintiffs and their counsel will adequately protect the putative class members' interests. Neither Plaintiffs nor their counsel have any interests that might cause them to not vigorously pursue this action.

101.     **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation. Even if the putative class members could afford individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by LoanCare's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve several individual claims based on a single set of proof in a case.

102.     Within the three years prior to filing the lawsuit, Plaintiffs each submitted a Request for Information, as defined by Reg. X, 12 C.F.R. § 1024.36(a), in that it requested information that sufficiently identified Plaintiff's mortgage and properly specified information relating to the mortgage, specifically, the servicing notes in their records.

103.     Plaintiffs' letters were sent to the designated address by LoanCare for requests for information.

104.     LoanCare failed to provide the servicing notes, and upon information and belief, LoanCare failed to conduct the "reasonable search" for available information mandated by Reg. X, 12 C.F.R. § 1024.36(d)(1)(ii).

105.     Upon information and belief, LoanCare's refusal to provide the servicing notes based on a claim of confidentiality, privilege, or proprietary information, was from a boilerplate response LoanCare uses as a matter of policy or practice as an excuse not to comply with its obligations under 12 C.F.R. § 1024.36.

106.     There is no proper confidentiality, privilege, or proprietary objection to a borrower's request under 12 C.F.R. § 1024.36 for documents from their own servicing file.

107.     LoanCare's failure to comply with its obligations regarding Plaintiffs' Request for Information was part of a pattern and practice of noncompliance with its obligations under 12 C.F.R. § 1024.36, as evidenced by its refusal to provide this information to different borrowers across the country.

108.     Because of LoanCare's refusal, Plaintiffs and the class members were deprived of their legal right to review account notes that LoanCare relies on when deciding how to treat loans, such as determining whether it made representations to Plaintiffs about payment information, which Plaintiffs relied on.

109.     As a result of LoanCare's repeated violations of 12 C.F.R. § 1024.36, Plaintiffs and the class members suffered concrete and particularized harm, including: informational injury, the incurring of attorneys' fees, the incurring of unnecessary fees and interest on their respective mortgage accounts, and emotional distress, including aggravation and stress.

110.    Plaintiffs and the class members are entitled to recover actual damages, statutory damages, costs, and attorneys' fees from LoanCare for each of its violations of 12 C.F.R. § 1024.36 in an amount to be determined by the Court pursuant to 12 U.S.C. § 2605(f).

**COUNT TWO:**
**Violation of RESPA, 12 U.S.C. § 2605(e)(2), Reg. X, 12 C.F.R. § 1024.35(e)**
**(As to Mr. McClellan and Ms. Goins)**

111.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

112.    The mortgage obligation at issue is a "federally related mortgage loan" under RESPA, 12 U.S.C. § 2602(1), in that: (1) it is secured by a first lien on residential real property designed for the occupancy of one to four families and the proceeds of it were used to purchase the secured property, and it was made by a lender whose deposits or accounts are insured by the FDIC or who is regulated by the Office of the Comptroller of the Currency; and (2) it was intended to be sold by the originating lender to the Federal National Mortgage Association.

113.    Mr. McClellan and Ms. Goins were borrowers of this mortgage and LoanCare was the servicer of the mortgage in accordance with the meaning of 12 U.S.C. § 2605(e).

114.    Mr. McClellan's and Ms. Goins's letters from November 2020 and April 2021 each constituted a Notice of Error under 12 C.F.R. § 1024.35 in that Mr. McClellan and Ms. Goins notified LoanCare that they had entered a permanent modification with Ditech and had paid every month under the agreement, meaning that they should not be considered late on their mortgage.

115.    Mr. McClellan's and Ms. Goins's letter was sent to the address designated by LoanCare for notices of error.

116.    Upon receipt of that Notice of Error, LoanCare had to conduct a investigation of the matters raised in the Notice of Error. *See* Reg. X, 12 C.F.R. § 1024.35(e).

117.     Upon information and belief, LoanCare did not conduct an investigation under Reg. X, 12 C.F.R. § 1024.35(e). Had an investigation occurred, LoanCare would have discovered that Mr. McClellan and Ms. Goins did enter into a permanent loan modification and were not behind on their mortgage.

118.     LoanCare's failure to comply with its obligations with regard to Mr. McClellan's and Ms. Goins's Notice of Error was part of a pattern and practice of noncompliance with its obligations under 12 C.F.R. § 1024.35.

119.     LoanCare's continued refusal to recognize Mr. McClellan's and Ms. Goins' loan modification and on-time payments violates 12 U.S.C. § 2605(e)(2)(a).

120.     Because of LoanCare's conduct, Mr. McClellan and Ms. Goins suffered concrete and particularized harm, including the incurring of unnecessary fees and interest on their account and emotional distress, including stress and aggravation.

121.     Mr. McClellan and Ms. Goins are entitled to recover actual damages, statutory damages, costs, and attorneys' fees from LoanCare for its violations of 12 U.S.C. § 2605(e)(2)(a) in an amount to be determined by the Court pursuant to 12 U.S.C. § 2605(f).

**COUNT THREE:**
**Violation of FCRA, 15 U.S.C. §1681s-2(b)(1)(A)**
**(As to Mr. McClellan and Ms. Goins)**

122.     Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

123.     On one or more occasion within the past two years, by example only and without limitation, LoanCare violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to properly investigate Mr. McClellan's and Ms. Goins's disputes.

124.     When Mr. McClellan and Ms. Goins disputed their account with the credit bureaus, LoanCare used a dispute system named "e-Oscar," which has been adopted by the consumer

reporting agencies and their furnisher customers (such as LoanCare). E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systematic and uniform.

125.    When a consumer reporting agency receives a consumer dispute, it (usually via an outsourced vendor) translates each dispute into an automated consumer dispute verification ("ACDV") form.

126.    Upon information and belief, the ACDV form is how LoanCare has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

127.    Upon information and belief, Experian, Equifax, and Trans Union each forwarded Mr. McClellan's and Ms. Goins's disputes via an ACDV to LoanCare.

128.    LoanCare understood the nature of Mr. McClellan's and Ms. Goins's disputes when it received the ACDV forms.

129.    Upon information and belief, when LoanCare received the ACDV form containing Mr. McClellan's and Ms. Goins's disputes, LoanCare followed a standard and systematically unlawful process where LoanCare only reviews its own internal computer screen for the account and repeats back the same information to the ACDV system that was previously reported to the credit reporting agency.

130.    Upon information and belief, when LoanCare receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether the information already in its computer system is itself accurate.

131.    As a result of LoanCare's violations of 15 U.S.C. § 1681s-2(b)(1)(A), Mr. McClellan and Ms. Goins suffered concrete and particularized harm, including loss of credit, damage to reputation, embarrassment, humiliation, stress, and other emotional distress.

132. LoanCare's conduct in violating 15 U.S.C. § 1681s-2(b)(1)(A) was willful, rendering it liable to Mr. McClellan and Ms. Goins for punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, LoanCare was negligent, entitling Mr. McClellan and Ms. Goins to recover under 15 U.S.C. § 1681o.

133. Mr. McClellan and Ms. Goins are entitled to recover actual damages, statutory damages, costs, and attorneys' fees from LoanCare in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT FOUR:
### Violation of FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)
### (As to Mr. McClellan and Ms. Goins)

134. Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

135. On one or more occasion within the past two years, by example only and without limitation, LoanCare violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the credit reporting agencies.

136. As Plaintiffs detailed in the previous Count, LoanCare has elected to use the e-Oscar system for its FCRA disputes received through the consumer reporting agencies, including for Experian, Equifax, and Trans Union.

137. When it received the ACDV forms from the credit-reporting agencies, LoanCare did not review any of the documentation that Plaintiffs attached to their disputes, which demonstrated that they had paid their mortgage in full and on time.

138. If LoanCare had reviewed these documents, which included proof of Plaintiffs' payments, then it would have known that its previous reporting was incorrect and needed to be updated.

139.    LoanCare also failed to consider the other information that the consumer-reporting agencies provided regarding Plaintiffs' disputes, including the two-digit dispute code that the agencies listed on the ACDV form.

140.    LoanCare is aware of the meaning of the several dispute codes used by the consumer reporting agencies in e-Oscar.

141.    LoanCare does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the consumer reporting agencies.

142.    LoanCare understood Mr. McClellan's and Ms. Goins's disputes and that they claimed the information was inaccurate.

143.    As a result of LoanCare's violations of 15 U.S.C. § 1681-2(b)(1)(B), Mr. McClellan and Ms. Goins suffered concrete and particularized harm, including, but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

144.    LoanCare's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for punitive damages in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

145.    Mr. McClellan and Ms. Goins is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from LoanCare in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT FIVE:
### Violation of RESPA, 12 U.S.C. § 2605(e)(2)(a), Reg. X, 12 C.F.R. § 1024.35(e)
### (As to the Kanes)

146.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

147.    The mortgage obligation at issue is a "federally related mortgage loan" under Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2602(1), in that it is secured by a first lien

on residential real property designed for the occupancy of one to four families and the proceeds of it were used to purchase the secured property, and it was made by a lender whose deposits or accounts are insured by the FDIC and who is regulated by the Office of the Comptroller of the Currency.

148.    The Kanes were borrowers of this mortgage and LoanCare was the servicer of the mortgage in accordance with the meaning of 12 U.S.C. § 2605(e).

149.    The Kanes' letters from November 2020 and April 2021 each constituted a Notice of Error under 12 C.F.R. § 1024.35 in that the Kanes notified LoanCare that it was reporting them as late when it had made representations to them about payments owed on their mortgages, which the Kanes paid exactly as instructed.

150.    The Kanes' letter was sent to the address designated by LoanCare for notices of error.

151.    Upon receipt of that Notice of Error, LoanCare had to conduct an investigation of the matters raised in the Notice of Error. *See* Reg. X, 12 C.F.R. § 1024.35(e).

152.    Upon information and belief, LoanCare did not conduct an investigation under Reg. X, 12 C.F.R. § 1024.35(e). Had an investigation occurred, LoanCare would have discovered that the Kanes were told when to make payments and that they were specifically told not to make a December 2019 payment. Yet LoanCare, without notifying the Kanes, considered them delinquent on their mortgage.

153.    LoanCare did not perform any investigation of what it told the Kanes and did not provide proof that their payments were re-routed to Flagstar for some reason.

154.    LoanCare's failure to comply with its obligations with regard to the Kanes' Notice of Error was part of a pattern and practice of noncompliance with its obligations under 12 C.F.R. § 1024.35.

155.    LoanCare's continued refusal to investigate these issues violates 12 U.S.C. § 2605(e)(2)(a).

156.    Because of LoanCare's conduct, the Kanes suffered concrete and particularized harm, including the incurring of unnecessary fees and interest on their account and emotional distress, including stress and aggravation.

157.    The Kanes are entitled to recover actual damages, statutory damages, costs, and attorneys' fees from LoanCare for its violations of 12 U.S.C. § 2605(e)(2)(a) in an amount to be determined by the Court pursuant to 12 U.S.C. § 2605(f).

**COUNT SIX:**
**Violation of FCRA, 15 U.S.C. §1681s-2(b)(1)(A)**
**(As to the Kanes)**

158.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

159.    On one or more occasion within the past two years, by example only and without limitation, LoanCare violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to properly investigate the Kanes' disputes.

160.    When the Kanes disputed their account with the credit bureaus, LoanCare used a dispute system named "e-Oscar," which has been adopted by the consumer reporting agencies and their furnisher customers (such as LoanCare). E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systematic and uniform.

161.    When a consumer reporting agency receives a consumer dispute, it (usually via an outsourced vendor) translates each dispute into an automated consumer dispute verification ("ACDV") form.

162.    Upon information and belief, the ACDV form is how LoanCare has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

163.    Upon information and belief, Experian, Equifax, and Trans Union each forwarded the Kanes' disputes via an ACDV to LoanCare.

164.    LoanCare understood the nature of the Kanes' disputes when it received the ACDV forms.

165.    Upon information and belief, when LoanCare received the ACDV form containing the Kanes' disputes, LoanCare followed a standard and systematically unlawful process where LoanCare only reviews its own internal computer screen for the account and repeats back the same information to the ACDV system that was previously reported to the credit reporting agency.

166.    Upon information and belief, when LoanCare receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether the information already in its computer system is itself accurate.

167.    As a result of LoanCare's violations of 15 U.S.C. § 1681s-2(b)(1)(A), the Kanes suffered concrete and particularized harm, including loss of credit, damage to reputation, embarrassment, humiliation, stress, and other emotional distress.

168.    LoanCare's conduct in violating 15 U.S.C. § 1681s-2(b)(1)(A) was willful, rendering it liable to the Kanes for punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, LoanCare was negligent, entitling the Kanes to recover under 15 U.S.C. § 1681o.

169.     The Kanes are entitled to recover actual damages, statutory damages, costs, and attorneys' fees from LoanCare in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

### COUNT SEVEN:
### Violation of FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)
### (As to the Kanes)

170.     Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

171.     On one or more occasion within the past two years, by example only and without limitation, LoanCare violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the credit reporting agencies.

172.     As Plaintiffs detailed in the previous Count, LoanCare has elected to use the e-Oscar system for its FCRA disputes received through the consumer reporting agencies, including for Experian, Equifax, and Trans Union.

173.     When it received the ACDV forms from the credit-reporting agencies, LoanCare did not review any of the documentation that Plaintiffs attached to their disputes, which demonstrated that they had paid their mortgage in full and on time.

174.     If LoanCare had reviewed these documents, which included proof of Plaintiffs' payments, then it would have known that its previous reporting was incorrect and needed to be updated.

175.     LoanCare also failed to consider the other information that the consumer-reporting agencies provided regarding Plaintiffs' disputes, including the two-digit dispute code that the agencies listed on the ACDV form.

176.     LoanCare is aware of the meaning of the several dispute codes used by the consumer reporting agencies in e-Oscar.

177.    LoanCare does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the consumer reporting agencies.

178.    LoanCare understood the Kanes' disputes and that the Kanes claimed the information was inaccurate.

179.    As a result of LoanCare's violations of 15 U.S.C. § 1681-2(b)(1)(B), the Kanes suffered concrete and particularized harm, including, but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

180.    LoanCare's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for punitive damages in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

181.    The Kanes are entitled to recover actual damages, statutory damages, costs, and attorneys' fees from LoanCare in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

WHEREFORE, Plaintiffs, on behalf of themselves and the putative class members, move for class certification and for statutory, actual, and punitive damages, as well as their attorneys' fees and costs against LoanCare for the class claims, as well as actual, statutory, and punitive damages and attorneys' fees and costs for their individual claims; for prejudgment and post-judgment interest at the legal rate, and any other relief the Court deems appropriate.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,

**RYAN MCCLELLAN**
**AMBER GOINS**
**DORIS KANE**
**JOSEPH KANE**

By:_____/s/_____

Leonard A. Bennett, VSB # 37523
Drew D. Sarrett, VSB # 81658
**CONSUMER LITIGATION**
**ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601 Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.comE
Email: drew@clalegal.com

Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
Pat McNichol, VSB #92699
Kelly Guzzo, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
*Counsel for Plaintiff*